Complaint Brought Pursuant to 42 U.S.C. sec. 1983 for False Arrest, False Imprisonment, Malicious Prosecution, Intentional Infliction of Emotional Distress, Conspiracy and Negligence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

                                                                CIVIL ACTION 16-cv-0226

JOSEPH ARROYO,

                            Plaintiff,

            v.

THE CITY OF NEW YORK, POLICE
OFFICER JOHN DOE                                    AMENDED COMPLAINT
(AN OFFICER OF THE
48TH PRECINCT AKA POLICE OFFICER DAVID J.              JURY DEMAND AS
COOTE, SHIELD# 019647)                                    TO ALL COUNTS

                            Defendants.

_____

## INTRODUCTION

JOSEPH ARROYO ["ARROYO"] a resident of Bronx County, State of New York asserts the following claims against the defendants in the above-entitled action:

1. Violation of 42 U.S.C. 1983: False Arrest

2. Violation of 42 U.S.C. 1983: False Imprisonment

3. Violation of U.S.C. 1983: Excessive Force

4. Assault and Battery

5. Violation of 42 U.S.C. 1983: Malicious Prosecution

6. Intentional Infliction of Emotional Distress

7. Violation of 42 U.S.C. 1983: Conspiracy

8. Negligence

**JURISDICTION**

1. This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over claims arising under 42 U.S.C. § 1983.

2. Supplemental jurisdiction over ARROYO's pendent state law claims exists pursuant to 28 U.S.C. § 1367(a).

3. Plaintiff has complied with the requirements of New York General Municipal Law Section 50-H. ARROYO made and served a notice of claim on all municipal defendants, within the time required by New York General Municipal Law Section 50-e. More than thirty days have elapsed since the service of those notices, and no offer of settlement has been made.

**VENUE**

1. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York, the judicial district in which the claims arose, in which ARROYO currently resides, and in which defendants NYPD, namely 48th Precinct, conduct their business and where the underlying incident alleged occurred.

**JURY DEMAND**

1. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

1.  Plaintiff ARROYO  is, and at all times material to this Complaint was, a citizen and resident of the State of New York.  He resides in Bronx, NY.

2.  Defendant City of New York is a properly incorporated municipality for and under the purposes of Monell and its progeny.

3.  Police Officer Coote at all times since the instant allegations arose was a police officer of the NYPD.

## FACTS

1. On or about April. 28, 2013 ARROYO was riding in a vehicle, a Blue 1997 Ford Expedition.

2. ARROYO was riding with his girlfriend, Ms. Iris Cotto.

3. ARROYO was present at all times described in this hereinafter complaint.

4. ARROYO met Ms. Cotto on East 187th Street in the Bronx, and he entered her vehicle, prior to the underlying arrest.

5. Upon picking up ARROYO, Ms. Cotto noticed she needed gas for her vehicle.

6. She began driving toward the local gas station that she was familiar with.

7. She turned toward the direction of B&B Auto Parts located at 1255 East 180th Street, in Bronx County.

8.  As the vehicle headed in the direction of the Auto Parts store, toward the gas station, Ms. Cotto reached the intersection of East Tremont and Hughes Avenues and was ordered to pull over via a police loud speaker.

9. At the moment Ms. Cotto was not aware of any violation or infraction of any rule or regulation she had committed.

10.  Ms. Cotto was about her wits, and had not had any beverage nor substance which would affect her perception or ability to manage her vehicle.

11.  There were no defects, at the time of this instant incident, enabling the vehicle to function in normal operating capacity.

12.  Ms. Cotto complied and pulled over as soon as it was safe for all other vehicles and pedestrians in the area.

13. Upon stopping the vehicle, ARROYO was dragged out of the vehicle by multiple police officers.

14.  He was physically dominated and forcefully made to exit the vehicle against his will.

15.  Ms. Cotto witnessed the entirety of this scene.

16.  BOTH ARROYO and Ms. Cotto were handcuffed.

17.  Plaintiff ARROYO was arrested.

18.  The arresting officer used excessive force in effectuating the arrest, to whit ARROYO was caused to suffer significant injuries to her body, specifically to his face and back, resulting in a black eye, and structural back injuries.

19.  Injury was caused to ARROYO's back when he was thrown to the ground and repeatedly beat about the body and head.

20.  ARROYO was subjected to this for a significant period of time.

21.  FURTHERMORE, ARROYO notes that during his arrest he was kicked by police officer's wearing boots, causing significant pain and redness, contusion, abrasion and injury to his body and face.

22. ARROYO was then brought to the 48th Precinct, and eventually to Central Bookings after being processed.

23.  ARROYO mentioned, repeatedly, that he needed medical attention to the officers that directly caused her injuries, however, his cries were ignored and no medical attention was sought.

24.  Medical treatment was purposely denied although the extent of the injuries were clear and evident.

25.  This failure serves to aggravate the actions of the officer(s) in question whom purposely allowed ARROYO to suffer over an extended period of time after having caused her injuries.

26.  ARROYO was arraigned after being detained for two days.

27.  Bail was not set and ARROYO was released.

28.  ALL CHARGES were ultimately dismissed on December 12, 2013.

29.  The basis of the dismissal was that the lab report on the alleged crack cocaine that ARROYO possessed came back negative noting no trace of any contraband.

30.  ARROYO was caused to suffer severe emotional distress as a result of the instant incident.

31.  ARROYO has needed to attend regular physical therapy sessions.

32.  ARROYO has not been able to regain the ability to walk normally as he could prior to this instant incident.

33.  ARROYO has suffered severe emotional distress as a result of this incident.

34.  ARROYO was detained against his will in central booking..

35.  NYPD officers systematically, and without care or regard for the well-being of ARROYO acted maliciously, purposely, and with intent of causing significant injury causing aid injury to ARROYO.


## ILLEGAL STOP
## OF ARROYO

1.  ARROYO was not alleged to have been engaged in any illegality at the time of the stop.

2.  There was no warrant presented for his arrest.

3.  No warrant was ever obtained for his arrest.

4.  The evidence cannot support any illegality or wrong doing on the part of ARROYO

5.  The officers in question improperly reached a conclusion that ARROYO was engaged in illegality based on insufficient evidence and lacking sufficient cause to make such determination.

6.  No evidence was presented in the accusatory instrument of any rationale as to why the officers were NOT limited to the usual requirements of law and sufficient cause to make an arrest of ARROYO.

## WRONGFUL SEARCH OF ARROYO

1.  ARROYO was searched without cause and without reason.

2.  The items allegedly recovered from him and vouchered against him were NOT contraband.

3.  The officer utilized an illegal stop as the basis for an illegal search under the fruit of the poisonous tree doctrine.

## PRESUMPTION OF PROBABLE CAUSE

1.  No Grand Jury ever voted to indict on this matter, as such no presumption of probable cause exists.

## EVIDENCE CLEARED ARROYO
## YET PROSECUTION PERSISTED

1.  The lab report clearly notes that the alleged crack cocaine allegedly recovered was NOT crack cocaine.

## DAMAGES

1.  The actions of the defendants deprived plaintiff ARROYO of his civil rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the laws and Constitution of the State of New York.

2. The unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of the defendants caused ARROYO to be wrongly seized, maliciously prosecuted, unfairly subjected to illegal searches and cruel and unusual punishment during the course of his prosecution and incarceration.

3. The unlawful, intentional, willful, deliberately indifferent, reckless, negligent, and/or bad-faith acts and omissions of the defendants caused ARROYO the following injuries and damages, which continue to date and will continue into the future: multiple physical assaults and batteries, and other physical injuries; pain and suffering; severe mental anguish; loss of educational opportunity; loss of professional opportunity; loss of income; infliction of physical illness; inadequate medical care; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled monetary relief.

4. Finally, and more specifically have caused ARROYO to suffer significant injury to his back requiring extensive physical therapy and permanent damage to her leg and her ability to walk and ambulate himself.

5. All the acts and omissions committed by the defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages

**COUNT 1**

**42 U.S.C. § 1983 False Arrest of Ms. ARROYO**

**as Against All Defendants**

1. ARROYO  hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows:

2.  As against Defendant Coote, ARROYO notes that he was placed into handcuffs and beaten by the Officer and several of his co-assailants. Defendant was acting within the scope of his employment as a police officer of the City of New York and was in full uniform at the time of the incident. Furthermore, Defendant drove a vehicle clearly demarked as a NYPD police vehicle, and utilized special equipment (loud speaker) on said vehicle to stop Plaintiff ARROYO at the time of the incident.

3.  No probable cause existed at the time of the arrest, nor is there a presumption based on indictment as the matter was never indicted.

4.  Defendant City of New York, under Monell, is liable under a theories of

    I.    Officially promulgated policy, under Lanier V. City of Woodburn, 518 F3d 1147, in that the NYPD has been found to have a policy of stop and frisk which illegally targets persons of color for illegal stops searches and seizures of their person. See Floyd v. City of New York, 959 F Supp. 2d 540.

    II.    IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. We would ask the Court take judicial notice of Floyd, regarding this custom and practice.

III.   IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and in a wonton manner without reprieve. There is without question clear evidence of officers misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and no further education provided. City of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train officers not to brutally injure, beat, and disfigure citizens the proliferation of such events would clearly seem to state otherwise.

5.   As a direct and proximate result of the defendants' actions ARROYO was wrongly charged, detained and placed bail upon, and suffered the other grievous and continuing injuries and damages as set forth above.

**COUNT II**

**42 U.S.C. § 1983 False Imprisonment**

**Against ALL DEFENDANTS**

1.   ARROYO hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

2.   Defendants acting individually and in concert, falsely imprisoned PLAINTIFF, thereby depriving ARROYO of his Fourteenth Amendment (as incorporated) right not to be illegally seized.

3.  Specifically, Defendant Coote and his cohorts illegally detained and imprisoned ARROYO for a crime they knew he did not commit, which he denied, and which a lab report later would corroborate had not occurred.

4.  ARROYO was aware of the imprisonment.

5.  He did not consent.

6.  There was no privilege nor cause.

7.  Furthermore, deliberately and recklessly failed to investigate leads pointing toward ARROYOs innocence, including but not limited to seeking an immediate lab report.

8.  Defendant Coote is liable as he directly took ARROYO into custody and caused his arrest and detention.

9.  Defendant City of New York, under Monell, is liable under the following theories

IV.   Officially promulgated policy, under Lanier V. City of Woodburn, 518 F3d 1147, in that the NYPD has been found to have a policy of stop and frisk which illegally targets persons of color for illegal stops searches and seizures of their person. See Floyd v. City of New York, 959 F Supp. 2d 540. The imprisonment stemming from such claims must inherently be seen as false imprisonment.

V.   IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here, the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. Here, the Court must clearly note that there is pattern of detainees being held subsequent to bail, and more aptly that custom of NYPD officers is to engage in such reckless behavior causing injury and false imprisonment to citizens.

VI.     IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and rapaciously without reprieve, there is without question clear evidence of officers misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and not further education provided. City of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train officers not to falsely arrest, detain, and imprison citizens given recent trends this may in actuality not be true at all, and seemingly the need has never in actuality been greater.

10. As a direct and proximate result of the defendants' actions ARROYO was wrongly imprisoned, and suffered the other grievous and continuing injuries and damages as set forth above.

## COUNT III

### 42 U.S.C. § 1983 Excessive Force
### As Against All Defendants

1.  ARROYO hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

2.  Defendants, despite knowing that probable cause did not exist, arrested and prosecuted ARROYO.

3. Excessive force was used, to whit Defendant suffered significant injuries at the hands of the officers in question.

4. Case law permits the resistance of an unlawful arrest, given the lack of a presumption of probable cause and lab reports showing no criminality we would present that ANY resistance of this arrest would have been appropriate and as a result and force to meet said resistance must undoubtedly fail the test of legality.

5. Furthermore, there is no allegation of resistance in this matter, and as a result the Court should find given the injuries that force was used, and that said force was unreasonable.

6. Defendant Coote is liable as he directly caused the injuries to ARROYO with the assistance of his cohorts.

7. Defendant City of New York, under Monell, is liable under the theory:

      VII.    The above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. Here there have been a multitude of excessive force claims in this district alone, and more specifically against this defendant… as such the Court should properly take an inference of knowledge against this instant Defendant.

      VIII.    IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and rapaciously without reprieve, there is without question clear evidence of officers' misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and not further education provided. City of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train

officers not to brutally injure, beat, and disfigure citizens the proliferation of such events would clearly seem to state otherwise.

8.  As a direct and proximate result of the defendants' actions, ARROYO suffered physical harm and injury.

## COUNT IV

### 42 U.S.C. § 1983 Claim for ASSAULT & BATTERY

**1.** ARROYO hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

2.  ARROYO was physically assaulted and battered by Officer Coote and his cohorts he was beat about the face and body.

3.  The physical attack was not privileged nor was there any cause for said attack, nor was said physical aggression part of any lawful arrest.

4.  Defendant COOTE is personally liable and professionally liable as a result of personally engaging in this attack.

5.  Defendant New York City is liable under a Monell claim as follows:

- As a theory of respondeat superior as to any and all state claims.

- Defendant City of New York, under Monell, is liable under the theory

  IX.   Officially promulgated policy, under Lanier V. City of Woodburn, 518 F3d 1147. In the that the NYPD has been found to have a policy of stop and frisk which illegally targets persons of color for illegal stops searches and seizures of their person. See Floyd v. City of New York, 959 F Supp. 2d 540. Arguably an Illegal stop and search clearly constitute an assault/battery as such we would present prior case law within this District note a history of an official policy, we ask the Court take judicial notice of Floyd.

X.      IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. We would ask the Court take judicial notice of Floyd, regarding this custom and practice.

XI.     IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and rapaciously without reprieve, there is without question clear evidence of officers' misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and not further education provided. City of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train officers not to brutally injure, beat, and disfigure citizens the proliferation of such events would clearly seem to state otherwise.

**COUNT V**
**42 U.S.C.  § 1983 Malicious Prosecution**

1. ARROYO hereby incorporates by reference all of the foregoing paragraphs.

2.  Defendant City of New York, through its agent the Assistant District Attorney assigned to the matter, maliciously prosecuted ARROYO.

3.  To whit, Defendant continued to prosecute ARROYO although they were clear they did not have a case. More specifically, the lab reports tested negative and no controlled substance was in the possession of ARROYO.

4.  Defendant was in possession of the alleged controlled substance and could have tested it at any juncture, especially given the position of ARROYO that He was innocent and possessed no controlled substance.

5.  ARROYO was charged with a crime; i.e. a prosecution was commenced against him.

6.  The prosecution terminated favorably in that the matter was fully dismissed

7.  Finally, we allege maliciousness on the part of the People in that they were again aware of the fact that the alleged controlled substance was not in actuality a controlled substance. Secondarily, the people were in possession of this substance maliciously, purposely, recklessly, and without cause delayed the testing of said substance although the crux of the defense was ALWAYS that there was no controlled substance present in what the police seized.

8.  Defendant City of New York, under Monell, is liable under the  theory
    - Under Pembaur v. City of Cincinnati, 475 US 469, the Court held that the decision of a final policy maker could constitute official policy. In the instant matter there clearly was a decision to continue prosecution as against ARROYO, regardless of if the decision was made at the level of the ADA handling the case or the District Attorney himself, we would present that this individual by definition acted as a final decision maker and as such for Monell purposes liability should properly lie

XII.     Officially promulgated policy, under Lanier V. City of Woodburn, 518 F3d 1147.

          In that the District Attorneys office regularly prosecutes cases and makes decisions

          to continue prosecutions as against defendants under the weight of the evidence,

XIII.    IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND

          PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez

          v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v,

          County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally

          constructive knowledge of a practice is sufficient for liability.

XIV.     IN THE ALTERNATIVE, the above should be clear evidence of a failure to train

          as ANY attorney practicing ethically and obeying the basic rules of practice of this

          State would understand their obligation under Brady and move to dismiss charges

          immediately upon a negative test for controlled substance in a matter where the

          only charge is possession of said substance.


## COUNT VI

**42 U.S.C. § 1983 Claim for Supervisory Liability Against CITY OF NEW YORK**

1. ARROYO hereby incorporates by reference all of the foregoing paragraphs and further states as follows:


2. Defendant acted with deliberate indifference, recklessness, and/or gross negligence to the constitutional rights of citizens by failing to provide adequate training, supervision, and discipline of its agents, and thereby caused ARROYO'S rights to due process, and rights against unlawful search and seizure, were violated.

3.  The deliberately indifferent, reckless, and/or grossly negligent conduct of defendant violated a clearly established duty.

 4.  Defendant's actions and omissions proximately and directly caused ARROYO to be wrongly arrested and prosecuted.

### COUNT VII

### 42 U.S.C. § 1983 Claim for INTENTIONAL
### INFLICTION OF EMOTIONAL DISTRESS

1.  ARROYO hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

2.  By their conduct and under color of state law, defendants and Supervisors had opportunities to intercede on behalf of ARROYO to prevent a false prosecution however no one did.

3.  ARROYO was detained and housed in central bookings causing significant and extreme emotional distress given he was brutalized and charged with a crime the evidence clearly now shows he did not commit.

4.  ARROYO was subjected to a dark and dirty cell containing rodents and insects, as well las other pests.

5.  The accommodations wreaked of urine and bodily fluids

6.  He was not provided food of his choosing.

7.  He was not at liberty to leave.

8.  Medical care which was requested was denied, and ARROYO was caused to sit and suffer in his own blood.

9.  The Defendants' failures causing extreme emotional distress causing psychological damage and pain leading to anxiety, depression, lack of sleep, insomnia, pain.

10.  As a direct and proximate result of the Defendants' failures, ARROYO was injured and suffered the other grievous and continuing injuries and damages as set forth above.

11.  Defendant City of New York, under Monell, is liable under the theory:

> XV.   Officially promulgated policy, under Lanier V. Woodburn, 518 F3d 1147. In the that the NYPD has been found to have a policy of stop and frisk which illegally targets persons of color for illegal stops searches and seizures of their person. See Floyd v. City of New York, 959 F Supp. 2d
>
> XVI.   IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. We would ask the Court take judicial notice of Floyd, regarding this custom and practice.
>
> XVII.   IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and rapaciously without reprieve, there is without question clear evidence of officers misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and not further education provided. City of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train officers not to brutally injure, beat, and disfigure citizens the proliferation of such events would clearly seem to state otherwise.

## COUNT VIII

### 42 U.S.C. § 1983 Civil Rights Conspiracy Claim

1.  ARROYO hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

2.  Defendants, and others yet unknown agreed among themselves and with other individuals to act in concert in order to deprive ARROYO of her clearly established Fourth, Fifth, and Fourteenth Amendment rights.

3.  In furtherance of the conspiracy the defendants engaged in and facilitated numerous overt acts, including, without limitation, the following:

    i.    Defendants illegally stopped ARROYO.

    ii.    Defendants pulled ARROYO and his girlfriend out of the car.

    iii.    Defendants threw ARROYO to the ground

    iv.    Defendants punched ARROYO in the face repeatedly, and throughout his body.

    v.    Defendants kicked ARROYO about the head and body, specifically his back, while he was down on the ground defenseless.

    vi.    Defendant's took ARROYO into custody.

    vii.    He was fingerprinted

    viii.    Caused to be detained

    ix.    Was forced to be arraigned

    x.    Was released after approximately 48 hours.

    xi.    AT all times and in ALL ACTIONS Defendants acted in concert, and with a clear intention to act as a single unit in the furtherance of the assault described in this instant complaint.

**COUNT XII**

**State Law Claim for Malicious Prosecution
Against Defendant Coote**

1.  ARROYO hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

2.  Defendants, despite knowing that probable cause did not exist to arrest and prosecute ARROYO for POSSESSION OF A CONTROLLED SUBSTANCE., and despite the fact that the grand jury's probable cause determination was vitiated by the Defendants' undisclosed misconduct and by other concealed, material, exculpatory and impeachment evidence, acted individually and in concert to cause ARROYO to be arrested and prosecuted for those crimes. The Defendants' conduct violated Mr. ARROYO'S right pursuant to the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures, and proximately caused his wrongful conviction.

3.  Specifically, Defendant Coote knew or in the absence of his deliberate and reckless indifference to the truth, should have known of information that probable cause did not exist to arrest and prosecute ARROYO, including but not limited to the facts that the lab report was negative for a controlled substance.

4.  Defendants' actions to deprive ARROYO of his liberty without probable cause were in violation of clearly established constitutional law, and no reasonable police officer would have believed that the defendants' actions were lawful.

5.  As a direct and proximate result of the defendants' actions ARROYO was wrongly

prosecuted, and suffered the other grievous and continuing injuries and damages as set forth

above.

## COUNT XIII

### State Law Claim for Intentional or Reckless Infliction of Emotional Distress

1.  ARROYO hereby incorporates by reference all of the foregoing paragraphs and further alleges

as follows:

2.  The conduct of defendants in deliberately causing, or recklessly disregarding the risk of

causing, the wrongful arrest, prosecution, and incarceration of ARROYO was extreme and

outrageous, and directly and proximately caused the grievous and continuing injuries and damages

set forth above.

3.  Defendants' actions intentionally to inflict emotion distress upon ARROYO were in violation

of clearly established law, and no reasonable police officer would have believed that the

Defendants' actions were lawful.

## COUNT XIV

### State Law Claim for Negligent Infliction of Emotional Distress

1.  ARROYO hereby incorporates by reference all of the foregoing paragraphs and further alleges

as follows.

2.  Defendants negligently, grossly, and in breach of their duties owed to ARROYO did not refrain

from (a) fabricating evidence, (b) withholding material, exculpatory and impeachment evidence,

(c) failing to conduct a constitutionally adequate investigation, and (d) maliciously prosecuting ARROYO.

3.  The Defendants' actions caused ARROYO to suffer physical harm, including physical ailments resulting from the circumstances and duration of his wrongful incarceration, and to fear for her physical safety throughout the period of incarceration.

## Respondeat Superior Claim Against CITY OF NEW YORK

1. ARROYO hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

2.  At all times relevant to this complaint Defendant COOTE acted as an agent of, and in the scope of his employment with, Defendant City of New York. The conduct by which Defendant COOTE committed the torts of malicious prosecution, intentional, or reckless infliction of emotional distress, and negligent infliction of emotional distress was undertaken while COOTE was carrying out his routine function as a POLICE OFFICER, and was engaged in such conduct as would have been reasonably expected by, and was in fact foreseen by, his employer.

3.  New York City is liable for COOTE's state law torts of malicious prosecution, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress under the doctrine of respondeat superior.

**WHEREFORE,** Plaintiff ARROYO prays as follows:


i.    That the Court award compensatory damages to him and against the defendants, jointly

and severally, in the amount of $5,000,000.00

ii.    That the Court award punitive damages to him, and against all non-municipal defendants, in

an amount, to be determined at trial, that will deter such conduct by defendants in the future;

iii.    For a trial by jury;

iv.    For pre-judgment and post-judgment interest and recovery of his costs, including reasonable

attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

v.    For any and all other relief to which he may be entitled.




Respectfully submitted,



JOSEPH ARROYO
By his attorney
September 29, 2016


_____//s//_____
Conway C. Martindale II
Martindale & Associates, PLLC
380 Lexington Avenue, 17th Floor
New York, NY 10168
212-405-2233